UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CASE NO. 5:22-cv-00169-MR

| | |
|---|---|
| BRANDON PICKENS, ) </br> ) </br> Petitioner, ) </br> ) </br> vs. ) </br> ) </br> TODD ISHEE, Secretary, North ) </br> Carolina Department of Adult ) </br> Corrections, ) </br> ) </br> Respondent. ) </br> _____ ) | **MEMORANDUM OF** </br> **DECISION AND ORDER** |

**THIS MATTER** is before this Court on the *pro se* Petitioner's Petition for Writ of Habeas Corpus [Doc. 1], the Respondent's Motion for Summary Judgment [Doc. 10], and the Petitioner's Motion to Expedite [Doc. 19].

I.  **PROCEDURAL BACKGROUND**

Brandon Pickens (the "Petitioner") is a prisoner of the State of North Carolina incarcerated at the Alexander Correctional Institution in Taylorsville, North Carolina. [Doc. 1]. This is a 28 U.S.C. § 2254 habeas corpus proceeding that stems from the Petitioner having received a loss of good-

time credits in connection with a September 23, 2022, disciplinary hearing.[1] [Doc. 1 at 2]. The disciplinary hearing officer convicted the Petitioner of directing "language or specific gestures or acts that are generally considered disrespectful, profane, lewd, or defamatory" at a correctional officer, a B24 infraction, and sentenced the Petitioner to a loss of 30 days of good-time credits. [Docs. 11-3 at 4; 11-4 at 1-7]. The Petitioner's administrative appeal was denied on November 1, 2022. [Docs. 1 at 2; 25 at 2].

The Petitioner filed his § 2254 Petition for Writ of Habeas Corpus in this Court on November 14, 2022, claiming that corrections officials violated his due process rights with respect to the disciplinary hearing process, and seeking to have his disciplinary conviction overturned and his good-time credits restored. [Doc. 1 at 5-7]. The Petitioner alleges his conviction was based on insufficient evidence, and that Disciplinary Hearing Officer "Jerry Laws failed to provide [him] with the complete record of [the Petitioner's disciplinary] hearing summarizing all information, evidence, or statements developed . . . ." [Id. at 6].

This Court entered an Order on January 18, 2023, initially directing the

---

[1] The Petitioner originally brought this action pursuant to 28 U.S.C. § 2241. However, this Court construed his petition as one for habeas relief under 28 U.S.C. § 2254 because the relief he seeks is generally and more properly sought under § 2254. [See Doc. 4 at 5].

2

Respondent to answer or respond to the § 2254 petition within 60 days; however, this deadline was extended on March 3, 2023, and on April 18, 2023. [Doc. 4]. On May 4, 2023, the Respondent filed its Motion for Summary Judgment, along with a memorandum containing the relevant policies governing the disciplinary process and documents purporting to relate to the Petitioner's September 20, 2022, B24 infraction. [Docs. 10; 11]. The Petitioner filed his first response on May 12, 2023, before filing an addendum on July 21, 2023, a second response on July 24, 2023, and a motion to expedite on September 28, 2023.[2] [See Docs. 12; 14; 15; 19]. The Respondent did not reply.

On December 6, 2023, after it became apparent that the Respondent had submitted documentation from the Petitioner's unrelated September 12, 2020, disciplinary infraction in support of its motion for summary judgment, rather than the documentation from Petitioner's September 20, 2022, infraction, this Court ordered the Respondent to file the correct documentation within seven days and allowed the Petitioner fourteen days to respond to the Respondent's filing. [See Doc. 24]. The Respondent filed

---

[2] "Responses to motions must be filed within fourteen (14) days of the date on which the motion is served." N.C.W.D. L. R. 7.1(e). The Respondent's Motion for Summary Judgment [Doc. 10] was filed on May 4, 2023. Accordingly, the Petitioner's July 21, 2023, "Addendum" and July 24, 2023, "Response in Opposition," were untimely. As such, they are stricken. However, if this Court were to consider these filings, its conclusions would remain unchanged.

3

corrected documentation on December 13, 2023, and the Petitioner filed objections, a third response in opposition to the Respondent's motion for summary judgment, and an addendum on December 27, 2023. [See Docs. 25; 26; 27; 28]. The Respondent's Motion for Summary Judgment is now ripe for disposition.

## II. STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material only if it might affect the outcome of the suit under governing law. Id.

The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (citing Fed. R. Civ. P. 56). The burden then shifts to the nonmoving party to proffer competent evidence and specific facts showing that there is a genuine

issue for trial. Id. at 323-24. The nonmoving party must oppose a summary judgment motion by going beyond the pleadings and by their own affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial." Id. (citing Fed. R. Civ. P. 56). The nonmoving party "may not rest upon the mere allegations or denials of his pleading" to defeat a motion for summary judgment. Id. at 322, n.3.

Any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the summary judgment motion. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986). Where, however, the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, summary judgment is appropriate. Id. at 599. A court must enter summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Catrett, 477 U.S. at 322.

In reviewing the Respondent's motion, this Court must also consider the requirements governing petitions for habeas corpus as set forth in the Antiterrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2254(d). The AEDPA applies to "a person in custody under a state-court

5

Case 5:22-cv-00169-MR   Document 32   Filed 02/14/24   Page 5 of 15

judgment who seeks a determination that the custody violates the Constitution, laws, or treaties of the United States." Rule 1(a)(1), 28 U.S.C. foll. § 2254. Under the AEDPA, a state prisoner's claims are limited to allegations that challenge either the fact or duration of their confinement. Preiser v. Rodriguez, 411 U.S. 475, 489 (1973). "Federal courts may not issue writs of habeas corpus to state prisoners whose confinement does not violate federal law." Wilson v. Corcoran, 562 U.S. 1, 1 (2011).

### III. FACTUAL BACKGROUND

The following facts are undisputed, unless otherwise noted. On September 20, 2022, at approximately 6:35 AM, Corrections Officer Kevin Roten "was making rounds in [the Petitioner's cellblock] . . . ." [Doc. 25 at 4]. The Petitioner declares that when Roten approached his cell, that he asked "Roten to bring [him] the newspaper and further stated that [he] did not want to continue playing games concerning accessing [his] tablet so let[']s start today off right and for the record could you put cell B4 down for receiving his tablet." [Doc. 13: Pickens Dec. at ¶ 1]. The Respondent contends that the Petitioner stated "fuck you c/o, get my fucking tablet[,]" when Roten approached his cell. [Doc. 25 at 4].

Roten reported the incident "to the Sergeant on duty," and filled out a

DC-138B "Statement By Witness" form, that states in its entirety:

> I Officer Roten on 9-20-2022 at approx 0635 I was making rounds in [the Petitioner's cellblock] then Inmate Brandon Pickens stated fuck you c/o get my fucking tablet. I then reported to the sargent [sic] on duty.

[Doc. 25 at 10, 12]. After making his report, Roten returned to the Petitioner's cell and instructed the Petitioner to pack his belongings so that he could be moved to a different cell. [Doc. 13 at ¶¶ 4-5]. Officers Hansley, Madden, and Clawson later escorted the Petitioner to a cell in a different block. [Id. at ¶ 6].

Once the Petitioner was placed in his new cell, Clawson, the Investigating Officer, "read [him] the reporting party['s] statement and his rights as stated on the DC[-]138A [form] . . . ." [Doc. 25 at 10]. The Petitioner signed a copy of his rights. [Id. at 10, 15.]. Clawson informed the Petitioner that "he was being subjected to disciplinary action for a B24 offense[,]" and he filled out a DC-138B form that Clawson provided. [Docs. 12-1 at 3; 13 at ¶¶ 7-8; 25 at 10, 16]. The Petitioner's statement reads in relevant part as follows:

> On the date and time in question, while Roten entered the cell block I . . . stated "I do not want to continue with the games concerning not getting my tablet so let's start today off right and for the record could you put cell NB4 down for receiving my tablet." . . . This is all on camera and I would like this

7

> evidence to be previewed. Roten left the cell block and returned later and directed me to pack up my stuff to move to another cell block. I packed my stuff and later Hensley [sic], Madden, and the Sergeant escorted me to another cell block.

[See Doc. 25 at 16]. The Petitioner checked boxes on his DC-138B form indicating that he did not wish to request "live witness(es) be present at [his] hearing" and that he did not wish to "request staff assistance at [his] hearing[.]" [Id.]. However, he requested that any video footage of the incident be collected as evidence, and that a statement be collected from a nearby inmate, Chris Leach. [Id. at 10, 16].

The Petitioner declares that "Clawson DID not review the video footage in question during his investigation and instead gave a false summary of the video footage" in his report. [Doc. 13 at ¶ 9]. Clawson's report states that "[a]s the investigating officer [he has] reviewed the video footage and it neither adds nor detracts from the reporting party statement." [Doc. 25 at 11]. Leach was provided with a DC-138 form, on which he wrote, "no statement." [Id. at 17]. Officers Madden and Hansley both filled out DC-138B forms, however, they noted only that they assisted in moving the Petitioner to his new cell. [Id. at 13-14]. After completing his investigation, Clawson wrote that he had "reviewed and verified the reporting party statement[,]" and that he recommended proceeding with the B24 infraction.

[Id. at 10-11].

On September 23, 2022, a hearing was held before Disciplinary Hearing Officer Jerry Laws, at which the Petitioner pled "not guilty" to the B24 infraction. [Id. at 6]. The Petitioner was found guilty, however, and was sentenced to a loss of 30 days of good-time credit. [Id.; Doc. 12-1 at 4]. The Petitioner declares that Officer Laws "failed to review the video footage which [he had] requested to be produced as evidence at [his] disciplinary hearing" and that Laws "DID NOT provide [him] with a copy of the written record of hearing which provided a summary of the evidence supporting [his] guilt for the B24 offense and the reason for the punishment imposed." [Doc. 13 at ¶¶ 11-12]. The Respondent contends that "all statements and the investigating officer's report w[ere] read during the hearing" and that Laws "reviewed the video footage" before concluding that it "does not add to nor detract from the remaining evidence in this matter." [See Doc. 11 at 4-5]. However, while the Respondent purports to quote portions of the record from this hearing, the records he submitted, [Doc. 25 at 4-8], do not contain the

language he purports to be quoting.[3] Aside from stating that the Petitioner was found "GUILTY" of the B24 infraction, these records do not at all demonstrate what transpired at this hearing.[4] [See id.]. Indeed, the portion of these records that states "summary of all information, evidence, or statements developed at the hearing relating to guilt or innocence" is blank.[5] [Id. at 6].

After his disciplinary hearing, the Petitioner filed an inmate disciplinary appeal to "the Director of Prisons" on September 23, 2022. [Docs. 11 at 5; 12-1 at 4; 13 at ¶ 13]. Notice of the Petitioner's appeal was received on October 4, 2022, and Monica Bond, the appeal reviewer, issued a decision "uph[olding] sanctions" on November 1, 2022. [Doc. 25 at 2]. However, the one-page record of the Petitioner's appeal contains no explanation for

---

[3] The citations that the Respondent includes in his Memorandum in Support of his Motion for Summary Judgment [Doc. 11] purporting to reference the records of the Petitioner's disciplinary hearing are incorrect. While the Respondent did not consecutively number each of the pages in the documentation relating to the Petitioner's B24 infraction [Doc. 25], page 10 is the first page of Investigating Officer Clawson's report—not documentation from the Petitioner's disciplinary hearing before Officer Laws, as the Respondent represents. [See id. at 10]. However, notwithstanding this, *none* of the documents the Respondent submitted contain the language he purports to quote.

[4] It is unclear if the Respondent has submitted all of the records from the Petitioner's disciplinary hearing. For instance, two of the five pages submitted are labeled as page number 1 and the other three are labeled as page number 2. Additionally, four of the five pages are stamped: "This document was not legible when scanned."

[5] Additionally, none of these documents were signed by the disciplinary hearing officer, even though pages 5 and 8 have signature lines. [Doc. 25 at 5, 8].

Bond's decision, nor any statement of what evidence she reviewed. [Id.]. The Petitioner did not seek review in state court. [Doc. 1 at 2-3].

## IV. DISCUSSION

The Petitioner contends that he was convicted of the B24 infraction based on insufficient evidence and that Disciplinary Hearing Officer Laws violated his due process rights by failing to provide him with a complete record of his disciplinary hearing. [Doc. 1 at 6]. The Respondent moves for summary judgment arguing that these claims are meritless, and that the Petitioner failed to exhaust his state law remedies. [See Doc. 11 at 6, 9, 12]. As noted above, however, the records the Respondent has submitted from the Petitioner's disciplinary hearing do not at all explain what transpired at that hearing. Thus, the Court is only able to address the Respondent's argument regarding exhaustion.

"[W]hen a state prisoner challenges the length or duration of his confinement by alleging that certain good time credits were cancelled . . . pursuant to an unconstitutional process, and then seeks the restoration of those credits, he must first exhaust his state remedies." See Farrell v. Whitener, No. 3:13-cv-00530-FDW, 2015 WL 1457434, at *3 (W.D.N.C. Mar. 30, 2015) (citing Todd v. Baskerville, 712 F.2d 70, 72 (4th Cir. 1983)). The exhaustion requirement reflects "an accommodation of our federal system

11

designed to give the State an initial opportunity to pass upon and correct alleged violations of its prisoners' federal rights." Picard v. Connor, 404 U.S. 270, 275 (1971) (internal citation and quotation marks omitted). In order "[t]o provide the State with the necessary opportunity, the prisoner must fairly present his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." Baldwin v. Reese, 541 U.S. 27, 29 (2004) (internal citation and quotation marks omitted).

The Petitioner concedes that he did not seek judicial review of his claims in state court. [See Docs. 1 at 2-3; 12-1 at 9-11]. He contends, however, that the prison actions resulting in the forfeiture of his good-time credits are purely administrative and thus, that he satisfied the exhaustion requirement by appealing to the Director of Prisons.[6] [Doc. 12-1 at 10-11].

A prisoner, however, is required to exhaust his *state* remedies, not only his state administrative remedies. Farrell, 2015 WL 1457434, at *3 (W.D.N.C. Mar. 30, 2015); Todd, 712 F.2d at 72. To do otherwise would

---

[6] NCDAC has a three-step administrative appeals process. Moore v. Bennette, 517 F 3d 717, 721 (4th Cir 2008); N.C. Gen. Stat § 148-118.1 et seq. Monica Bond is apparently the chief disciplinary hearing office for NCDAC. 5:22 CV 134 (WDNC 2023). As such, it appears that the Petitioner has somehow skipped the intermediate step of that process and appealed directly to the top administrative review officer. If the Petitioner's claims were merely administrative, rather than constitutional, there would be no basis for this action pursuant to 28 U.S.C. § 2254.

12

place the federal courts in the position of having the initial review of state administrative proceedings, even where state courts offer an avenue of review. Such would be contrary to the federalist structure of the dual state and federal court systems. 28 U.S.C § 2254(b)(1)(A); Picard, 404 U.S. at 275.

"North Carolina permits a state prisoner to challenge the calculation of credits against a prison sentence by filing a Motion for Appropriate Relief, N.C. Gen. Stat. § 15A-1411 *et seq.*, in the superior court where the conviction arose and by appealing any adverse ruling thereon in the state appellate courts." Hatcher v. Keller, No. 1:10CV30, 2010 WL 1568458, at *2 (M.D.N.C. Apr. 16, 2010) (citing State v. Bowden, 193 N.C. App. 597, 597-600, 668 S.E.2d 107, 108-09 (2008)); see also Satori v. N.C. Att'y Gen., No. 1:11-cv-00024-RJC, 2011 WL 1542134, at *2 (W.D.N.C. Apr. 22, 2011); Tompkins v. Thomas, No. 5:10-HC-2004-BO, 2010 WL 4735910, at *2 (E.D.N.C. Nov. 15, 2020). Alternatively, "North Carolina allows prisoners to bring civil suits in equity in State court to challenge the denial of their good-time credits." Satori, 2011 WL 1542134, at *2 (citing Smith v. Beck, 176 N.C. App. 757, 627 S.E.2d 284 (2006); Teasley v. Beck, 155 N.C. App. 282, 574 S.E.2d 137 (2002)).

Since the Petitioner concedes that he did not pursue either of these

13

judicial avenues for review of his administrative appeals, he has not established that he has exhausted his state remedies. Neither has he asserted any basis on which this failure should be excused. As a result, the Respondent's motion for summary judgment is granted.

Additionally, pursuant to Rule 11(a) of the Rules Governing Section 2254 and Section 2255 Cases, this Court declines to issue a certificate of appealability. See 28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 484 (2000) (when relief is denied on procedural grounds, a petitioner must establish both that the dispositive procedural ruling is debatable and that the petition states a debatable claim of the denial of a constitutional right).

## ORDER

**IT IS, THEREFORE, ORDERED** that:

1. The Respondent's Motion for Summary Judgment [Doc. 10] is **GRANTED**;

2. The Petition for Writ of Habeas Corpus [Doc. 1] is **DENIED**;

3. The Petitioner's untimely responses [Docs. 14, 15] are **STRICKEN**;

4. The Petitioner's Motion to Expedite [Doc. 19] is **DENIED AS MOOT**;

5. This Court declines to issue a certificate of appealability pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases; and

6. The Clerk is directed to terminate this case.

**IT IS SO ORDERED.**

Signed: February 14, 2024

Martin Reidinger
Chief United States District Judge